407 F.2d 1114
 UNITED STATES of America, Plaintiff-Appellee,
v.
John C. BARNETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lee Fred McINTURFF, Defendant-Appellant.
 Nos. 18588-18589.
 United States Court of Appeals Sixth Circuit.
 March 7, 1969
Certiorari Denied May 19, 1969.
See 89 S.Ct. 1748.
 
 John F. Dugger, Morristown, Tenn., for appellants.
 Robert E. Simpson, Knoxville, Tenn., (J. H. Reddy, U.S. Atty., Knoxville, Tenn., on the brief), for appellee.
 Before CELEBREZZE and COMBS, Circuit Judges, and McALLISTER, Senior Circuit Judge.
 CELEBREZZE, Circuit Judge.
 
 
 1
 This consolidated appeal comes to us from the United States District Court, Eastern District of Tennessee, wherein John C. Barnett and Lee Fred McInturff, hereinafter Appellants, were tried without a jury and convicted under an indictment charging the possession and transportation of nontax-paid whiskey, 26 U.S.C. 5205(a)(2) and 5604(a)(1).
 
 
 2
 Appellant Barnett was sentenced to serve five years and fined $1.000 for possession. The imposition of a sentence for transportation was suspended, but he was placed on probation for five years to run consecutively to his term of imprisonment.
 
 
 3
 Appellant McInturff was sentenced to one year imprisonment for possession and since the imposition of sentence was suspended on the charge of transportation, he was placed on probation for a period of two years running consecutively to his imprisonment.
 
 
 4
 Both Appellants are now challenging the validity of the search and seizure and the subsequent sentencing. Appellant McInturff is also questioning the sufficiency of the evidence to convict him. Appellants' motion to suppress the evidence obtained by the warrantless search of the auto was denied in the District Court.
 
 
 5
 On February 23, 1967, Agent James R. Beeler of the United States Treasury Department, Alcohol and Tobacco Tax Division, had a prearranged meeting with a known, but undisclosed, informant at 6:15 p.m., in Johnson City, Tennessee. The informant was to have had more information pertaining to a particular situation, but had not been able to obtain it. According to Agent Beeler, the informant then stated, 'Well, you can catch J. C. Barnett and Fred Lee McInturff (Appellants) tonight if you want to because they will be making their milk run'.'[1] Agent Beeler was told that Appellants would be making several deliveries to bootlegging joints this same evening, and that at approximately 8:15 p.m. Appellants would be making a delivery of nontax-paid whiskey to Willard 'Big-un' Cook's drink joint located on Red Row. There were to be three other stops in addition to the one on Red Row. Street names and exact locations of the different drink joints were given for all but one of the stops.
 
 
 6
 The informant stated that Appellants were obtaining their moonshine in Unicoi County in Limestone Cove. He related that Appellant McInturff would usually pick it up, for Appellant Barnett, who, besides being tied up during the days, would not be bothered with the nontax-paid whiskey, except on deliveries. Barnett would be driving a 1959 blue and white two-door Chevrolet. Agent Beeler testified that much of the information was already known to him.
 
 
 7
 Agent Beeler had known this informant for several years. Although not a regularly paid government informant, he did receive money on different occasions. Agent Beeler testified that no arrests had been made as a result of the information, but that it was through no fault of the informant. On two occasions the stakeouts were discovered prior to the deliveries and on the third a still was blown up by the agents. In the latter instance the man purported to have been the operator was found, but no arrest was made.
 
 
 8
 The meeting between Agent Beeler and the informant lasted for approximately fifteen minutes. Beeler then proceeded across the street to the Alcohol Beverage Commission Office where he met with Special Investigator William H. Lindsey and A.B.C. Agents Cecil Ray, Robert Rhea and Curtis Combs. After relating what he had learned from the informant, Agent Beeler attempted to call United States Commissioner Coleman in Johnson City. After finding the line busy, at approximately 6:45 p.m. the Agents divided into three teams and left for the Red Row area located outside the Johnson City limits.[2] On previous occasions when Agent Beeler had tried to secure a warrant from Commissioner Coleman after office hours, it had taken approximately two hours to get one issued.
 
 
 9
 Upon arrival at Red Row Agents Rhea and Beeler set up surveillance in an open field approximately thirty-five yards away from the entrance to Willard Cook's drink joint. Agent Ray and Special Investigator Lindsey were located in a car on Fairfax, which intersected Red Row. Two other City Police vehicles, one containing Agent Combs, were stationed on Millard and Queen Streets. All of the officers and agents were in either walkie-talkie or radio contact.
 
 
 10
 By 7:15 p.m. the surveillance was completely set up. Shortly thereafter two men drove up and proceeded to Cook's residence. Cook came out and walked over to the drink joint. When he returned to the residence the two men left. It was at this time that the Agents noted the light signals.[3]
 
 
 11
 Nothing more occurred until about 8:15 p.m. when an automobile came driving into Red Row with its lights off. The auto proceeded to Cook's drink joint and then backed up to his residence. When the auto stopped, Appellant McInturff, the passenger, got out of the auto, opened the trunk and removed two one-gallon glass jugs which he carried into the house. Although the contents, if any, were not known, the jugs appeared transparent and colorless.[4]
 
 
 12
 While Beeler was alerting his men to close in, Appellant McInturff returned, empty handed, to the car. Immediately, the car started down Red Row with its lights off. Beeler notified the other teams to be on the lookout for the 1959 Chevrolet. Within minutes the city police spotted the car containing Appellants, and Agent Beeler ordered them stopped.
 
 
 13
 In a few moments Beeler was at the scene of the arrest and asked Appellant Barnett for the keys to the trunk of the car. Barnett replied, 'No, Red, I won't give you the keys, that would be giving my permission to search my vehicle, and I am not giving you my permission.' As the Appellants were being driven away in a police car to the police station, the search of the auto was started. After finding that access to the trunk could not be reached through the rear seat, the trunk lid was forced open with an axe. A one gallon glass jug of nontaxpaid whiskey was found therein.[5] It is this evidence which Appellants allege was illegally seized.
 
 
 14
 There are three questions before this Court: 1) whether there was probable cause to arrest Appellants and then to search the automobile, 2) whether there was substantial evidence to convict Appellant McInturff, and 3) whether the District Court, by imposing cumulative sentences, imposed double punishment for a single offense?
 
 
 15
 It is Appellants' contention that there was not sufficient probable cause to arrest the Appellants and thus the subsequent search of the automobile was invalid. If, in the alternative, the arrest were valid, the warrantless search was not incident to that arrest.
 
 
 16
 This Court is of the opinion that prior to the making of the arrest there was legal probable cause to make the arrest and also to search the automobile. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Freedman v. Commissioner of Internal Revenue, 301 F.2d 359 (5th Cir.1962). There can be no doubt that Agent Beeler believed that Appellants were transporting nontax-paid whiskey when he saw them. See Carroll v. United States, 267 U.S. 132, 160, 45 S.Ct. 280, 69 L.Ed. 543 (1928). Although the facts and circumstances known to Agent Beeler '* * * did not constitute proofs of guilt beyond a reasonable doubt, they did represent probable cause for a reasonable man to believe that appellants had committed (or were committing) a felony.' United States v. Johnson, 403 F.2d 1002 (6th Cir.1968); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1928); Lovell v. Henderson, 386 F.2d 257 (6th Cir.1967).
 
 
 17
 The facts and circumstances in this case, when considered collectively represent a basis for probable cause. The informant gave a very detailed and accurate description not only of the actual 'milk run', but also as to where and when the nontax-paid whiskey would be picked up. Although Agent Beeler did not know whether this information was within the personal knowledge of his informant, coupled with corroboration, reliability, and other factors known to Agent Beeler, it could be used in his formulation of probable cause. Spinelli v. United States, 393 U.S. , 89 S.Ct. 584, 21 L.Ed.2d 637 (January 27, 1969); Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833 (1966) cert. denied 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967); see United States v. Roth, 391 F.2d 507, 511 (7th Cir.1967). Here we are not confronted with an arrest based solely on an informant's tip. On previous occasions, this informant had given information which had proved to be reliable. United States v. Freeman, 382 F.2d 272 (6th Cir. 1967); see Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958). Though no arrests were made, Agent Beeler testified that it was due to no fault of the informant. Agent Beeler had known the informant for several years and had no reason to doubt his truthfulness or reliability. United States v. Thacker, 382 F.2d 732 (6th Cir.1967). The corroborating events which happened subsequent to setting up the surveillance on Red Row, coupled with Agent Beeler's prior experience and knowledge, we believe, were sufficient to constitute probable cause.[6] United States v. Thacker, 382 F.2d 732 (6th Cir.1967); see Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958) and United States v. Freeman, 382 F.2d 272 (6th Cir.1967). Any specific event or detail which was not corroborated could be assumed true due to the corroboration of the other events. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958). Although some of the events viewed during the stakeout, if considered out of context, might seem innocent, once coupled with the informant's disclosures, they would help to constitute the probable cause. United States v. Thacker, 382 F.2d 732 (6th Cir.1967); Newcomb v. United States, 327 F.2d 649 (9th Cir.1964).
 
 
 18
 In Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833 (1966), cert. denied, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967), the Court stated that
 
 
 19
 '* * * probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the 'laminated' total.'
 
 
 20
 In light of the survey of the circumstances surrounding the arrest, this Court can reach no conclusion but that probable cause existed for the arrest of the Appellants. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1928); United States v. Kucinich, 404 F.2d 262 (6th Cir.1968); United States v. Johnson, 403 F.2d 1002 (6th Cir.1968).
 
 
 21
 Having concluded that the arrest of Appellants was valid, this Court now turns to the question of whether the search of the automobile which produced the one gallon of nontax-paid whiskey was incident to that arrest. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962). Although it is well settled that a valid arrest will justify a limited warrantless search, the practical application of this rule has caused courts considerable difficulty. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1928); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); United States v. Kucinich, 404 F.2d 262 (6th Cir.1968). In United States ex rel. Mahoney v. LaVallee, 396 F.2d 887, 888 (2d Cir.1968), the Court stated:
 
 
 22
 'It has frequently been suggested that a search conducted without a warrant is reasonable under the Fourth Amendment as incidental to a lawful arrest only if it is 'absolutely necessary' that the police conduct the search without delay.' See McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).
 
 
 23
 However, the courts have allowed searches where it was neither necessary for the arresting officers to protect themselves from the arrestee nor to prevent the destruction of the fruits or instrumentalities of the crime. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). The reasonableness of a search under the Fourth Amendment must be found then in the facts and circumstances of each case. United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Appellants contend that at the time of the search there was no compelling reason why the agents could not have secured a search warrant. However, the validity of the search rests not on the obtainability of a warrant, but rather on whether the search was reasonable. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), reh. denied 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).
 
 
 24
 We recognize there is a difference in the standards to be applied to the search of a house or a motor vehicle, for in the latter circumstances the law officers are confronted with a mobility factor.[7] Preston v. United States, 376 U.S. 364, 366, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1924). In the principal case there was no chance of the auto being driven away, for Appellants were enroute to the station house at the time of the search. Preston v. United States, supra. This Court does not believe that the mobility factor is necessary to justify this search which was incident to a lawful arrest. As in Rabinowitz, supra, we must look to the particular facts and circumstances to determine the reasonableness of the search and seizure. United States ex rel. Mahoney v. LaVallee, 396 F.2d 887 (2d Cir.1968).
 
 
 25
 Appellants also claim that the search was not contemporaneous with the arrest and therefore could not be justified as being incidental to that arrest. We are not faced with a situation where Appellants had already been booked at the station house or where the search was made at a place other than where the arrest took place. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), reh. denied 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir.1968). Nor are we faced with a search which is completely unrelated to the arrest. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963). See Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), reh. denied 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967).
 
 
 26
 Here the automobile had not been moved from the situs of the arrest and the Appellants were just being taken away.[8] In the cases holding a search as not being incident to an arrest, the arresting officers had gone to the station house and returned to the scene of the arrest to search,[9] had conducted searches in areas not within the immediate control of appellant,[10] or larger time lapses had occurred between the arrest and search.[11] Although the Appellants had been arrested prior to the making of the search, Appellants had not arrived at the station house and been booked as was the case in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963), and United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir.1968). Crawford v. Bannan, 336 F.2d 505 (6th Cir.1964), cert. denied 381 U.S. 955, 85 S.Ct. 1807, 14 L.Ed.2d 727 (1965), rehearing denied 382 U.S. 873, 86 S.Ct. 12, 15 L.Ed.2d 116 (1965).
 
 
 27
 The record as a whole substantiates that the officers conducting the search had reasonable or probable cause to believe that nontax-paid whiskey would be found. United States v. Freeman, 382 F.2d 272 (6th Cir.1967). See Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1967) (dicta). We are of the opinion that the search and seizure were 'substantially contemporaneous' with the arrest and incidental to it. Stoner v. California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); United States ex rel. Mahoney v. LaVallee, 396 F.2d 887 (2d Cir.1968); Crawford v. Bannan, 336 F.2d 505 (6th Cir.1964), cert. denied 381 U.S. 955, 85 S.Ct. 1807, 14 L.Ed.2d 727 (1965), rehearing denied 382 U.S. 873, 86 S.Ct. 12, 15 L.Ed.2d 116 (1965). The District Court properly denied Appellants' motion to suppress evidence on the bases: (1) there was probable cause to make the arrest, (2) the search and seizure were incident to a valid arrest, and (3) the search was limited to the auto which was under the immediate and complete control of the Appellants.
 
 
 28
 Appellant McInturff alleges that there was not substantial evidence presented to convict him on a charge of possession. It is true that the mere presence at the scene when nontax-paid whiskey is located is not enough to support convictions for possession or transportation, United States v. Readus,367 F.2d 689 (6th Cir.1966); United States v. Paige, 324 F.2d 31 (4th Cir.1963). However, we are not dealing with a situation of mere presence. The testimonial evidence presented is such that a reasonable inference could be drawn that Appellant McInturff was a party to the crime. See United States v. Day, 394 F.2d 335 (6th Cir.1968); Prince v. United States, 217 F.2d 838 (6th Cir.1954). We are convinced that the evidence was sufficient to permit the trier of fact to find Appellant McInturff guilty beyond a reasonable doubt. United States v. Luxenberg, 374 F.2d 241 (6th Cir.1967).
 
 
 29
 Lastly, Appellants contend that the District Court in imposing cumulative sentences on the first and second counts of the indictment imposed double punishment for a single offense.
 
 
 30
 This Court held in Mathis v. United States, 200 F.2d 697 (6th Cir.1952) that the cumulation of sentences to two consecutive terms of five years' imprisonment on convictions of transporting, and possessing, respectively, a single quantity of distilled spirits in containers without affixed internal revenue stamps at same time and place, was invalid as constituting double punishment for single offense, so as to require that sentence for possession be expunged.
 
 
 31
 The Government in its brief and argument concedes that if the present case is not distinguishable from Mathis, supra, that the sentences imposed under Count 2 as to both Appellants should be expunged. We draw no distinction between this case and Mathis, supra, and hold that the sentences imposed on both Appellants on the Second Count of the indictment should be expunged.
 
 
 32
 The judgments of conviction are affirmed, however the causes are remanded to the District Court with directions to expunge the sentences of Appellants imposed upon the Second Count of the indictments.
 
 
 
 [1]
 A 'milk run' is a delivery of nontaxpaid whiskey from the wholesaler to the retailer. It normally consists of from one to two gallons delivered to each retailer
 
 
 [2]
 The overall plan included the use of Johnson City police who were contacted later
 
 
 [3]
 According to the agents when you have an operation involving two buildings, electric lights on the buildings are used to signify whether the places are open, where the owner is, whether it's clear for a delivery, etc
 
 
 [4]
 The record shows that it was the common custom of the moonshine trade in this area to bottle nontax-paid whiskey in gallon jugs
 
 
 [5]
 In addition to the moonshine, the trunk contained tools, cigarettes, coca-cola syrup, candy, and various other items associated with Appellant Barnett's vending machine business
 
 
 [6]
 A partial listing of the corroborating events consisted of the 8:15 p.m. arrival of an unlighted auto driven by Appellants which matched the informant's description as to year, make, and color. A delivery of 'jugs' was also made to 'Bigun' Cook. Agent Beeler also knew that there was to be a delivery on Millard Street. According to the agents staked out in that area, no such delivery had been made. Therefore, Beeler could reasonably assume the delivery was to be made and the car still contained nontaxpaid whiskey. The agents knew that the area was infamous for its 'drink joints', that 'Big-un' cook was a known retailer, and that Appellants had past criminal records for bootlegging
 
 
 [7]
 In Cooper v. California, supra, the Court stated that '* * * searches of cars that are movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property.'
 
 
 [8]
 The testimony is conflicting as to whether Appellants had left for the station or were sitting in a police car at the scene during the search. In any event, Appellants departure could not have preceded the search by more than a couple of minutes
 
 
 [9]
 United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir. 1968)
 
 
 [10]
 Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925)
 
 
 [11]
 Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963); United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir. 1968)